**SEALED**

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2021 OCT 25 PM 3:41

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEBRAKA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BRIDGET REIS,  )<br>  )<br>Plaintiffs,  )<br>  )<br>vs.  )<br>  )<br>GENOA MEDICAL FACILITY, a  )<br>Nebraska Pol. Subdivision.; DR. BRIAN  )<br>BUHLKE, DO, FAAFP; and,  )<br>ATHENAHEALTH, INC.,  )<br>  )<br>Defendants.  ) | CASE NO. 8:21cv416<br><br><br><br>**FILED IN CAMERA<br>AND UNDER SEAL**<br><br><br><br>DEMAND<br>FOR<br>JURY TRIAL |

RECEIVED
OCT 25 2021
CLERK
U.S. DISTRICT COURT

**COMPLAINT FOR DAMAGES
AND
OTHER RELIEF UNDER THE *QUI TAM* PROVISIONS
OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729, et seq.]**

COMES NOW, the Relator, Bridget Reis, on behalf of herself and the United States of America ("Plaintiffs"), and for Plaintiffs' Complaint against Defendants, Genoa Medical Facility ("GMF"), Brian Buhlke, DO, FAAFP ("Dr. Buhlke"), and Athenahealth, Inc. ("Athena"), Relator alleges as follows:

**I.      THE FEDERAL FALSE CLAIMS ACT (31 U.S.C §3729, et seq.)**

1.      This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent statements, records, and claims made or caused to be made by the Defendants and/or their agents, employees, and co-conspirators in violation of the Federal False Claims Act, 31 U.S.C. §3729-3733, et seq.

2.      The Federal False Claims Act (the "FCA") was originally enacted during the Civil War, and was substantially amended in 1986, 2009, and again in 2010. All of the amendments were enacted by Congress in order to enhance the Government's ability to recover losses sustained

1

as a result of fraud against the United States, after finding that fraud in federal programs was pervasive and that the FCA was in need of modernization in order to more effectively combat such fraud. Congress has characterized the FCA as the primary tool for combatting fraud against the Government.

3. The liability provisions of the FCA provide that any person who knowingly submits, or causes the submission of, a false or fraudulent claim for the United States' funds for payment or approval, or who makes or causes to be made false records and statements in support of such claims, is liable for a civil penalty of up to $10,000.00 for each such claim, plus three times the amount of damages sustained by the Government pursuant to 31 U.S.C. §3729(a)(1)(G).

4. The "*Qui Tam*" provisions of the FCA allow any person having information about violations of the liability provisions of the Act to bring an action for himself/herself and the Government, and to share in any recovery. The FCA requires that the Complaint be filed under seal for a minimum of sixty days (without service on the Defendants during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

## II. PARTIES

5. Relator, Bridget Reis, is a resident of Nebraska who was employed by Defendant, Genoa Medical Facility, at all times relevant herein.

6. Defendant, Genoa Medical Facility ("GMF"), is a Nebraska Political Subdivision owned by the City of Genoa, Nebraska. It is a non-profit multi-facility health care organization comprised of a full-service hospital, Genoa Community Hospital ("GCH"), a long-term nursing care facility, Looking Glass Estates ("LGE"), a medical clinic, Park Street Medical Clinic ("PSMC"); and two (2) physical therapy locations, Loup Valley Physical Therapy. GMF collectively provides medical services including, but not necessarily limited to, assisted living,

emergency medical services, laboratory services, long term care, physical therapy and rehabilitation, radiology, speech therapy, and surgery.

7. Defendant, Dr. Brian Buhlke, is a physician employed by GMF in the family practice department. Upon information and belief, Dr. Buhlke was the owner of the Park Street Medical Clinic prior to selling it to the City of Genoa, at some time in 2017.

8. Defendant, Athenahealth, Inc. ("Athena"), is/was a foreign corporation headquartered in Massachusetts and licensed to do business in the state of Nebraska. Upon information and belief, Athena provides the electronic health records system and software ("EHR"), revenue cycle management, and medical billing services for GMF. Athena was acquired by Veritas Capital Fund Management, LLC, sometime in 2018.

### III. JURISDICTION & VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to U.S.C. §1331, 28 U.S.C. §1367, and 31 U.S.C. §3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and §§3730. The Defendants reside in, and/or transacts business in, the United States, District of Nebraska. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. §3732(a) because that section authorizes nationwide service of process and because of the Defendants minimum contacts with the United States (and the state of Nebraska). Moreover, as stated, the Defendants can be found in, reside in, and/or transact business (in no small degree) in the United States (District of Nebraska).

10. There has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint that could stand as a potential barrier to the jurisdiction of this Court over Relator's claims pursuant to 31 U.S.C. §3730(e). Moreover, even had such a public disclosure occurred within the meaning of the False Claims Act, Relator would qualify under that

3

section of the False Claims Act as an "original source" of the allegations in this Complaint, thus preserving this Court's jurisdiction over said claims.

11. Venue is proper in this jurisdiction pursuant to 31 U.S.C. §3732(a) because the Defendants can be found in, reside in, and/or transact business in the United States (specifically, the District of Nebraska). In addition, the False Claims Act violations, as alleged herein, occurred, and continue to occur, in said District.

12. To Relator's knowledge, no other *Qui Tam* actions have been filed which allege the same or substantially similar allegations, against the same named defendants, as those set forth herein.

### IV. MEDICARE & MEDICAID

13. In 1965, Congress enacted the Title XVIII of the Social Security Act, known as the Medicare program, to pay for the costs of certain healthcare services. Entitlement to Medicare is based on age, disability or affliction with end stage renal disease and amyotrophic lateral sclerosis ("ALS" or Lou Gehrig's disease). *See* 42 U.S.C. §§ 426, 426A.

14. Medicare Part B, 42, U.S.C. §1395G), et seq., covers "medical and other health services" not included within Medicare Part A (which covers expenses related to hospital services, home health services, and hospice care). Part B is primarily for physician and other ancillary services. Claims for Medicare Part B servicers are submitted on CMS form 1500.

15. CMS form 1500 requires the physicians who sign the form to the represent that: "in submitting this claim for payment from federal funds, I certify that: ... the services on this form were ... personally furnished by me." Under the line, "Signature of Physician (or Supplier)", the individual is also directed to represent: "I certify that the services listed above... were personally

4

furnished by me." In the Medicare Program Integrity Manual, CMS lists as an example of Medicare fraud, misrepresenting the identity of the individual who furnished the services.

16. Further, Medicare prohibits payment for services that are not "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." For most services, a reasonable charge has been defined as the lowest of (a) the actual billed charge, (b) the provider's customary charge, or (c) the prevailing charge for the service in the locality. 42 C.F.R. §§405.502-504

17. The Medicaid Program ("Medicaid") is a federally subsidized health insurance program under Title XIX of the Social Security Act, which pays for medical assistance for certain disabled persons and those with low income and minimal resources (hereinafter "recipients"). Medicaid became law in 1965, at the same time as the Medicare Program, as a cooperative venture jointly funded by the Federal and State Governments to assist the United States in furnishing medical assistance to eligible needy persons. In Nebraska, Medicaid receives approximately 55% of its funding from the Federal Government. The Nebraska Department of Health and Human Services ("NE DHHS") is responsible for the administration of Medicaid in the State of Nebraska.

18. As mentioned above, services not performed by a provider cannot lawfully be billed to Medicare or Medicaid. Further, services can only be billed to Medicare or Medicaid by the individual medical provider or physician who provided said services to individual patients. It is unlawful to use or knowingly allow an individual provider to use a different provider's credentials or billing codes when submitting claims to Medicare or Medicaid for payment of services rendered.

19. The National Provider Identification Number ("NPI") is a unique 10-digit identification number for healthcare providers that is used by all healthcare plans, including Medicare and Medicaid, in the submission of claims for reimbursement from the federal

5

government. All healthcare providers are eligible to receive an NPI, should they be eligible and apply for same. All Health Insurance Portability and Accountability Act ("HIPAA") covered providers, whether individuals or organizations, must obtain an NPI in order to identify themselves in HIPAA standard transactions and billing practices, including the submission of claims for reimbursement filed under Medicare or Medicaid.

20. Physicians, as well as all other Part B providers, must enroll in the Medicare program in order to receive sums from the federal government in reimbursement for services rendered to Medicare recipients. If any physician or provider joins a practice group (like GMF), he or she must file a "reassignment of Medicare benefits" application (found at form CMS-855-R) *before* that practice group can receive payments for services rendered by the provider.

21. Medicare rules prohibit Medicare Part B providers from seeking reimbursement from the Medicare program for services rendered by a provider unless said provider is both enrolled with the Medicare program when the services were actually provided and has reassigned his or her Medicare benefits to the billing provider.

22. Providers must submit claims for payment using CPT codes for the specific services rendered, in order to receive reimbursement from the Government for services covered by Medicare. CPT codes are standardized codes developed, and maintained, by the American Medical Association. The use of a standardized system allows providers across the United States to bill in a similar fashion and make the reimbursement process more efficient and easier to track for every individual medical, surgical, and/or diagnostic procedure performed. Not only does it streamline the reimbursement procedures, it also makes it easier to determine what services will and will not be covered by Medicare for each individual procedure or treatment that a patient is to receive.

## V. THE DEFENDANTS' FRAUDULENT PRACTICES

23. Upon information and belief, GMF Defendants (acting by and through its employees and agents) and Dr. Brian Buhlke have knowingly and unlawfully submitted and continue to submit false claims to the various federally and state funded health care programs as described above, for services that were either not rendered, were incorrectly or improperly billed or coded, or were not rendered by the physician under whose NPI the claim was submitted.

24. The Relator has extensive personal knowledge regarding the inner workings of GMF as she was a licensed practical nurse at PSMC at all times referenced herein.

25. In the fall of 2017, PSMC was purchased by the City of Genoa, Nebraska, and Genoa Medical Facility from Dr. Brian Buhlke. At the time of purchase, Ms. Amber Zoucha was responsible for the oversight of the credentialing and licensure procedures of PSMC. Around that same time (the fall of 2017), GMF enlisted the professional services of Athena to provide GMF with necessary electronic health records systems, revenue cycle management, and medical billing services for all of the GMF facilities.

26. In the early fall of 2019 GMF hired Ms. Kimberly Bradenburg, MSN, APRN, FNP-C. Ms. Bradenburg started seeing patients as soon as she was hired. Ms. Bradenburg was apparently still credentialed through her prior employer and was intending to reassign her credentials when she joined GMF, however, her credentialing through GMF did not commence until after her previous contract of employment (and associated credentialing) had terminated.

27. In April 2020, GMF hired Ms. Lauren Esch, APRN, and Ms. Paige Pauley, PA-C.

28. Ms. Esch did not receive her APRN licensure through the state of Nebraska until July 2020. Ms. Esch began seeing patients, regardless of the type of insurance said clients had (i.e.

private medical insurance carrier, Medicare, or Medicaid) in September 2020, prior to becoming properly licensed and credentialed to provide services and care by any of the above.

29. Ms. Pauley received her licensure as a physician's assistant from the State of Nebraska in September 2020. Ms. Pauley began seeing patients, regardless of the type of insurance said clients had (i.e. private medical insurance carrier, Medicare, or Medicaid) immediately after receiving her PA license in September 2020, prior to becoming properly licensed and credentialed to provide services and care by any of the above.

30. On April 7, 2021 GMF office manager, Ms. Amber Zoucha, reached out to Amanda Roebuck (Chief Executive Officer – GMF) and Ms. Angie (Sutton) Jones (Director of Financial Services – GMF) regarding the Medicare licensure status of Ms. Pauley. Ms. Zoucha reached out because she had received a complaint from a medical supplier denying an order placed by Ms. Pauley, as Ms. Pauley was not found in the "PECOS" (Provider Enrollment Chain and Ownership System) system responsible for enrolling and managing eligible Medicare providers for billing services. Ms Roebuck, allegedly claiming the mistake was related to an IT problem, instructed Ms. Zoucha to reach out to Lutz Technology (GMF's internet and technology contractor) regarding the issue.

31. On April 13, 2021, Lutz informed GMF that it did not have a record of proper licensure and/or credentialing for Ms. Esch, Ms. Pauley, or Ms. Bradenburg. Further, Lutz informed GMF that there were no pending applications for any of the above providers with the previously mentioned entities.

32. Between April and May 2021, the Relator and Ms. Zoucha took it upon themselves to attempt to determine the cause of the issues above. After some investigation, the Relator and Ms. Zoucha found that since the implementation of Athena's system in 2017 the

8

description/definition of "rendering" and "supervising" provider were set up backwards. As a result of their investigation, they came to the realization that every claim submitted to Medicare, Medicaid, and private insurance companies since the implementation of Athena's products in 2017 had listed Dr. Buhlke as the provider, regardless of whether Dr. Buhlke, one of the nurses, or one of the physicians' assistants has been the party providing said services. When Ms. Zoucha brought this information to the attention of Athena, they defended their actions and insisted that all of the claims had been entered into their system correctly.

33. On June 14, 2021, Ms. Zoucha discovered that Ms. Esch, Ms. Pauley, and Ms. Bradenburg were not properly credentialed with private insurance carrier Blue Cross Blue Shield ("BCBS") and were not authorized to provide services to patients being billing under "in-network" BCBS insurance coverage. On that date, Ms. Zoucha requested copies of credential approval letters for BCBS, as well as Medicare, from her supervisors. Ms. Zoucha was told that Ms. Pauley's credentialing application had not yet been completed. Following this revelation, Ms. Esch, Ms. Pauley, and Ms. Bradenburg voiced their concerns regarding their credentialing to Ms. Roebuck, who admitted that she was "more than aware that there is a problem."

34. On June 18, 2021, it was determined that Ms. Esch, Ms. Pauley, and Ms. Bradenburg were also not credentialed with Midlands Choice Insurance. At that time, Ms. Esch voiced her concerns about credentialing to Dr. Buhlke and asked for guidance on whether she should still be seeing patients. Ms. Esch was told by Dr. Buhlke that it was still "business as usual" and that she should continue to see patients and bill as she had been previously.

35. On June 21, 2021, Ms. Zoucha confirmed that Ms. Esch, Ms. Pauley, and Ms. Bradenburg were not properly credentialed with Midlands Choice, United Healthcare Community Plan (Medicaid), Medicare, Aetna, BCBS, or Nebraska Total Care (Medicaid). Upon further

9

review, it was determined that Ms. Esch's credentialing application was filed in August 2020 but never finished. In addition, it was determined that Ms. Pauley's application was not submitted until June 14, 2021 (the same date as the voiced concerns identified above).

36. On or about that same date (June 21, 2021), the issues of credentialing and billing issues were again brought to the attention of the CEO, Ms. Roebuck, at an internal department head meeting. During that meeting, Ms. Zoucha was allegedly told by administrative staff that she was "making a bigger deal out of this than is necessary". Ms. Zoucha proceeded to insist that all claims, specifically those being handled by or through Medicare and Medicaid, be put on hold until proper licensure and credentialing were in place. Ms. Roebuck insisted that all claims through private insurance were to be temporarily identified as "out-of-network" and would be retroactively changed once all providers were properly licensed and credentialed. To the best of Relator's knowledge, no patients were ever told that their claims were to be identified as "out-of-network".

37. As of June 23, 2021, Ms. Brandenburg was licensed and credentialed through BCBS, however, BCBS denied retroactive changes to charges that were billed as "out-of-network" prior to this date.

38. During the remainder of the month of June 2021 the staff at PSMC began the process of attempting to correctly bill claims submitted prior to May 2021 in the Athena management system. According to Ms. Zoucha, Ms. Hegemeyer did not know that PSMC and other GMF facilities had different NPI codes. It should be noted that Ms. Hegemeyer is/was responsible for the proper billing and credentialing of GMF employees.

39. On August 3, 2021, Ms. Zoucha, Ms. Jones, and representative(s) of Athena took part in a telephone conference call regarding some of the issues that had been taking place regarding medical providers and the Athena products. During that conversation, a representative

10

of Athena admitted that "rendering provider" and "supervising provider" had been set up incorrectly. Information was provided on how to fix the "issue" "permanently".

40. Shortly after the above-mentioned conversation, the Relator spoke with Ms. Zoucha who voiced her opinion that the phone conversation the day prior hadn't led (and wouldn't lead to) to any substantive changes and that all charges were still to be processed under Dr. Buhlke's name and NPI. Also, Ms. Zoucha identified several health insurance providers that had denied GMF claims because of the lack of proper licensure and credentialing of the providers rendering services to patients. Ms. Zoucha was told by Ms. Roebuck to continue billing under Dr. Buhlke until everyone was properly credentialed.

41. When concerns over compliance came to the attention of the Relator, she requested (in July 2021) a copy of GMF's corporate compliance procedures and guidelines as it related to billing procedures and compliance with applicable state and federal law. As of that time, said procedures and guidelines hadn't been updated since 2013 (prior to the acquisition of Dr. Buhlke's practice). The Relator had various conversations with members of GMF administrative staff regarding her concerns with internal procedures and compliance as it related to billing, billing procedures, and compliance with applicable law, specifically, with how claims were being submitted to Medicare and Medicaid.

42. Upon review of GMF's own internal compliance procedures, Relator found that GMF had self-imposed regulations requiring annual reassessment of: Developing billing procedures and policies relating to compliance and best practices related to same; Maintaining and keeping open lines of communications between administration and healthcare providers and staff; Providing training and continuing education to employees of both hospital administration and staff; Regular (*at least annual*) internal audits of billing procedures, policies, and management to

11

comply with state and federal law; Identifying, responding to, and remedying identified deficiencies in billing procedures and practices; Maintaining and enforcing disciplinary standards for failure to adhere to best practices as same apply to billing and coding procedures; Ongoing documentation (and maintenance of records) of audit results, reported incidents and the resolution of same, employee training provided (and required) by employer, and any modifications to GMF procedures; and Naming compliance officer(s) and delineating their duties including, but not necessarily limited to, reporting to the GMF Board of Directors the results of the above.

43. Upon information and belief, no internal or external audit of GMF's policies, procedures, or documentation of billed services has been conducted since at least 2017. Further, the Relator, in conversations with GMF administration was told that, since 2017, no internal audits had occurred because there had never been "a way to do that" in the past.

44. Athena's employees and/or agents were aware of the problems with the software program entry fields, yet failed to timely remedy the problem, and, therefore, Athena was complicit in allowing the ongoing acts of fraud committed by GMF and Dr. Buhlke to continue.

45. The relator has been provided information that reflects that Athena's billing software mishaps have caused similar problems for other healthcare systems across the country, likely resulting many more instances of false claims being submitted to Medicare, Medicaid, Tricare, etc.

## CAUSE OF ACTION

### Violations of the False Claims Act

46. Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs above as if fully set forth herein.

47. Relator, Bridget Reis, brings this Qui Tam action on behalf of herself and the United States Government to recover damages and perpetuate civil penalties under 31 U.S.C. §3729(a) of the False Claims Act.

48. 31 U.S.C. §3729(a) provides, in relevant part, liability for any person who:

a. Knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

b. Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; and,

c. Conspires to commit a violation of subparagraph (A),(B),(D),(E),(F), or (G); *Pointedly*, subparagraph (G) specifies that a person is liable under the Act if he/she/it: "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."

(Collectively, "False Claims.").

49. By virtue of the acts described herein, Defendants violated 31 U.S.C. §3729(a)(1) and (2) from at least as far back as 2017, up through the summer of 2021, and continuing through the present date, and knowingly presented, or caused to be presented, thousands of false or fraudulent claims to government programs or third-party administrators of government healthcare programs for Medicare and Medicaid reimbursement and/or knowingly failed to return payments made to them that were not reimbursable.

50. To the extent that Athena did not directly present the claims, it nevertheless "caused to be represented" the False Claims in question.

51. The Government programs and/or their third-party administrators, unaware of the Defendants' violations of §3729(a)(1) and (2) as described herein, paid, or contributed to the payment of, the false claims submitted by Defendants.

52. Each of the false statements made in the presentment of the False Claims were material to the Government's decision to pay the claims.

53. As a result of Defendants' violations of 31 U.S.C. §3729(a)(1) and (2), the United States Government has been damaged in an amount likely reaching into the millions of dollars, exclusive of interest.

54. Relator, Bridget Reis, is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 31 U.S.C. §3730(b) on behalf of herself and the United States of America.

## **PRAYER FOR RELIEF**

WHEREFORE, Relator / Plaintiff, Bridget Reis, respectfully prays that this Court award the following damages to the United States of America and the Relator:

To the UNITED STATES OF AMERICA:

    a. A sum equal to treble the United States' damages and civil penalties for each false claim submitted, up to the maximum amount allowed by law;

    b. Award of costs pursuant to 31 U.S.C. § 3792(a)(3); and,

    c. Such other and further relief as is just and proper.

To the RELATOR, Bridget Reis:

    a.    The maximum amount allowed pursuant to 31 U.S.C. §3730(d) and/or any other applicable provisions of federal law;

    b.    Reimbursement for reasonable expenses which Plaintiff incurred in connection with this action;

    c.    An award of reasonable attorneys' fees;

    d.    Such other and further relief as is just and proper; and,

    e.    The Relator hereby Demands a Jury trial.

Respectfully submitted this 25th day of October 2021.

UNITED STATES OF AMERICA, ex rel.
BRIDGET REIS, Relator,

By: /s/ Sean P. Rensch

Sean P. Rensch, NE Bar #23031
Matthew R. Chouinard, NE Bar #26482
Richard J. Rensch, Neb. Bar #15515
RENSCH & RENSCH LAW, PC, LLO
John D. Wear Building
7602 Pacific Street, Suite 102
Omaha, NE 68114
Ph:   (402) 498-4400
Fx:   (402) 498-0339
sean@renschlawyers.com

And,

By:   *_____

Michael J. Salmanson, PA Bar #46707
Salmanson Goldshaw, PC
2 Penn Center, Suite 1230
1500 JFK Boulevard
Philadelphia, PA 19102
Ph:   (215) 640-0594
msalmans@salmangold.com
**\*Pro Hac Vice Application to Be Filed**

*ATTORNEYS FOR RELATOR*

15